[No. S117287. June 30, 2005.]

MICHAEL WOLLERY DELGADO, Plaintiff and Appellant, v.
TRAX BAR & GRILL, Defendant and Appellant.

## COUNSEL

Law Offices of Eric G. Young, Eric G. Young; Ringhoff & Toledo, Stephen J. Ringhoff, Theressa Y. Toledo; Law Offices of Frank J. Christy, Jr., and Frank J. Christy, Jr., for Plaintiff and Appellant.

Hollingshead, Nardine, Bennett & Smith, Hollingshead, Bennett & Smith, David H. Bennett; Fatouhi • Epps • Hilger • Gilroy and Shahab E. Fotouhi for Defendant and Appellant.

Debra J. La Fetra for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Appellant.

## OPINION

**GEORGE, C. J.**—It is established that business proprietors such as shopping centers, restaurants, and bars owe a duty to their patrons to maintain their premises in a reasonably safe condition, and that this duty includes an obligation to undertake "reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*); see also *Taylor v. Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793] (*Taylor*), and cases cited.)

We granted review to address a related issue that has divided the Courts of Appeal. In *Mata v. Mata* (2003) 105 Cal.App.4th 1121 [130 Cal.Rptr.2d 141] (*Mata*), the appellate court, reversing an order granting summary judgment, held that when a bar proprietor voluntarily employs a guard on its premises, the proprietor has "*assumed*" a "*duty to protect*" its patrons from criminal assault "and therefore the issue of foreseeability becomes *irrelevant.*" (*Id.,* at p. 1128, italics added.) In the present case, which similarly concerns a bar at which guards (or "bouncers") were employed, the appellate court expressly disagreed with *Mata,* finding no duty owed and reversing a jury verdict for plaintiff, a bar patron who was injured in a criminal attack by another patron and his companions.

As we shall explain, although we agree with the Court of Appeal's criticism of the broad language of *Mata, supra,* 105 Cal.App.4th 1121, quoted *ante,* we nonetheless disagree with that court's conclusion that the proprietor in this case could not properly be held liable for the injury to its patron under the circumstances presented here. Accordingly, we conclude that the judgment rendered by the Court of Appeal, reversing the trial court's judgment in favor of plaintiff, must be reversed.

I

This case arises out of a criminal assault that took place in the parking lot of defendant Trax Bar & Grill (the bar or defendant) in Turlock, California. The evidence adduced at trial, viewed in the light most favorable to the judgment (see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 359, pp. 408–410, and cases cited), is summarized below.

On weekend nights in 1998, the bar employed two persons variously referred to throughout the trial as "security people," "security guards," or "bouncers."[1] One guard was stationed on a stool outside the bar, in the bar's parking lot. The second guard, Jason Nichols, was stationed inside the bar.

The bar manager testified that the guards were large and "good strong [men]" whom the manager "thought . . . would do a good job." He explained that he provided the guards with the T-shirts they wore (bearing the words "Trax Security" or "Security" on the back) and instructed them to (i) patrol the parking lot outside the bar to ensure that persons did not congregate or consume intoxicating beverages there, (ii) check identifications in order to keep out underage patrons, (iii) count those who entered so that occupancy did not exceed 150 persons, and (iv) not physically intervene in any altercation or attack, but instead telephone "911." In response to a specific question by plaintiff's counsel concerning whether the bar "had any responsibility for the safety of [its] customers in the parking lot," the manager replied, "[t]o a certain point, yeah, to see that they got to their car."

The bar manager explained that the local police had recommended the no-physical-intervention policy, but he conceded on recross-examination that the police could take up to 20 minutes to respond. The manager explained that one purpose of the policy was to protect the bar's own guards, who were not trained in crowd control, from injury.

The bar manager acknowledged that at times the bar's guards ignored the no-physical-intervention policy and personally interceded in fights between patrons, and that when the guards did so they were not disciplined for a violation of procedure. Indeed, a former guard at the Trax bar, John White (who left employment at the bar approximately one month prior to the incident here at issue), testified as an expert (on behalf of plaintiff) that the custom and practice of guards at local bars generally, and his own custom at the Trax bar, was to treat the safety of patrons as a "top priority," and to actively and physically intervene in attacks (whether inside the bar or in an adjacent parking lot) rather than simply to telephone 911. Finally, White testified that prior to terminating his employment at the Trax bar, he advised the manager that security was inadequate on busy nights.

Plaintiff Michael Wollery Delgado and his wife Linette Louise Wollery Delgado arrived at the Trax bar approximately 10:00 to 10:30 on a Saturday night in November 1998. Plaintiff, who stood six feet one inch tall and weighed 230 pounds, had consumed two beers earlier in the evening. After

---

[1] Trial testimony established that "bouncer" is the common term for a person who provides security services in a bar or other similar establishment.

entering the bar, and over the course of the following 60 to 90 minutes, he consumed one more beer. During this time another patron, Jacob Joseph (whom plaintiff did not know), and Joseph's three or four companions, stared at plaintiff on numerous occasions, and plaintiff stared back at the group. There was no verbal or physical interaction between plaintiff and Joseph or his companions at that time.

Prior to midnight plaintiff had become uncomfortable as a result of the continued staring and decided to leave. Although somewhat inconsistent testimony was presented to the jury concerning the events that immediately ensued leading to plaintiff's injuries, the jury could have found from the evidence the following: (1) plaintiff's wife approached Nichols (the interior guard) and expressed concern that "there was going to be a fight";[2] (2) Nichols himself then observed the hostile stares between plaintiff and Joseph and his companions and concluded that a fight was imminent;[3] (3) Nichols determined that, under the circumstances, it would be best to ask plaintiff and his wife to leave, and Nichols made that request;[4] (4) plaintiff and his wife thereafter left the bar, but Nichols did not escort them to their car in the parking lot;[5] (5) when plaintiff and his wife began to walk through the parking lot toward their car, which was parked approximately 40 feet from the bar door, the guard who earlier had been posted outside no longer was present, but 12 to 20 men were "standing" in the parking lot; (6) this situation was contrary to the bar's policy of dispersing such gatherings; and (7) Joseph and his companions followed plaintiff into the parking lot and accosted him, and the other persons who were in the parking lot joined with Joseph in the assault.[6]

---

[2] Nichols so testified. On redirect examination, however, plaintiff's wife explicitly denied having told Nichols that she feared a fight would occur.

[3] Nichols, who described himself as the bar's "head of security," testified that he observed plaintiff staring at Joseph, and Joseph (who was talking on a cell phone) staring back at plaintiff. Nichols explained that no words were spoken between the two but that Joseph continued to "blatant[ly] stare" at plaintiff. Nichols also stated that, based upon these observations, he anticipated that a fight was in the offing: "Usually from the past [of] what I saw in that bar, that meant there was, you know, going to be a fight."

[4] Nichols testified that he "went up to [plaintiff and] told him . . . I'm going to have to ask you to leave." According to Nichols, plaintiff responded, "that's no problem" and began to walk out of the bar. Nichols explained that he undertook these measures to "remove the threat," and that he elected to remove plaintiff rather than the others because "one guy is easier to move than four people."

[5] Plaintiff and his wife so testified. Nichols, however, asserted that he escorted plaintiff to the parking lot and that when the assault upon plaintiff began, he attempted to protect plaintiff and suffered injuries to himself in the process. No other testimony supported Nichols's assertions in this respect, and the parties stipulated that the extensive police reports concerning the events do not mention Nichols's name.

[6] Nichols testified that as plaintiff walked toward the car, Joseph, accompanied by three or four men from inside the bar, followed plaintiff outside and said something to the effect of

Immediately after the attack, or perhaps during the course of it, the other security guard telephoned 911 to seek police assistance. The police arrested Joseph at the scene, and he subsequently was convicted of felony assault upon a plea of no contest. Plaintiff suffered a fractured skull and a subdural hematoma, was hospitalized for 16 days, and subsequently experienced adverse personality changes as well as chronic headaches.

Plaintiff filed a personal injury suit against Trax Bar and Grill, Southern Pacific Transportation Company (the landlord), and Joseph; plaintiff's wife sued the same parties for loss of consortium. At the outset of the trial plaintiff's wife dismissed her suit, and plaintiff dismissed the landlord as a defendant. Thereafter, following opening statements, the parties stipulated that Joseph had been convicted of a felony, had filed for bankruptcy protection, and no longer was a party to the case.

Trial continued against the Trax bar only, on a premises liability theory. The jury was instructed pursuant to BAJI No. 3.11,[7] concerning foreseeability and negligence; BAJI No. 3.13.1,[8] concerning the duty to anticipate criminal conduct of a third person; and BAJI No. 8.23,[9] concerning the duty of care

---

"well, what's up?" Plaintiff responded similarly, and at that point, according to Nichols, "the four guys ran toward [plaintiff]," who "began to prepare to defend himself and there was a fight." Nichols testified that very soon thereafter Joseph, who is of Assyrian heritage, called out in Assyrian, and that 12 to 20 additional men immediately appeared from the area containing a dumpster and parked cars and began to assault plaintiff. Plaintiff testified that because he wished to protect his wife from danger from the attackers, he ran out of the parking lot and crossed the street, where he was followed by five or six men from the group. Once there he was beaten by Joseph and at least one other person with a stick or baseball bat. Plaintiff's wife testified that members of the group restrained her and taunted, "watch, watch. And they used some foul language [and said] [y]our husband is not so big now; is he?"

[7] That instruction provided: "One test that is helpful in determining whether or not a person was negligent is to ask and answer the question whether or not, if a person of ordinary prudence had been in the same situation and possessed of the same knowledge, [he] [or] [she] would have foreseen or anticipated that someone might have been injured by or as a result of [his] [or] [her] action or inaction. If the answer to that question is 'yes,' and if the action or inaction reasonably could have been avoided, then not to avoid it would be negligence."

[8] That instruction provided: "When the circumstances are such that the possibility of harm caused by the criminal conduct of a third person is, or in the exercise of due care should be, reasonably foreseeable, it is negligence to fail to use reasonable care to prevent such criminal act from causing [injury] or [damage]."

[9] That instruction provided: "The proprietor of a business establishment owes a duty of care to customers when they come upon the business premises at the proprietor's express or implied invitation. [¶] The business premises include property owned, possessed or controlled by the proprietor. [¶] This duty of care requires the proprietor to exercise reasonable care to discover whether accidental, negligent or intentionally harmful acts of third persons are occurring or are likely to occur on the business premises. If a proprietor knows, or should know that such acts are occurring or are likely to occur, the proprietor has the further duty to either give the customer a warning adequate to enable the visitor to avoid the harm, or otherwise to protect the visitor against such harm. [¶] A warning will not be adequate when it is apparent that

owed by the proprietor of a business.[10] By a vote of nine to three the jury returned a special verdict finding that (i) defendant was negligent; (ii) defendant's negligence was a substantial factor causing plaintiff's injuries; and (iii) defendant was 100 percent at fault. The jury awarded economic damages of $81,391.61 (exactly $20,000 more than the amount of the medical expenses that the parties stipulated were incurred by plaintiff as a result of the physical injuries inflicted in the attack) and nothing for noneconomic damages (that is, nothing for pain and suffering). Judgment was entered accordingly. Defendant moved for a new trial, asserting that it owed no duty to protect plaintiff from assault, and that there was insufficient evidence of breach and causation. The trial court denied the motion.

Defendant appealed, contending that because there was no evidence of prior similar criminal assaults either on its premises or in the vicinity, the assault upon plaintiff was unforeseeable as a matter of law, and that as a consequence it owed no duty to provide a security guard and thus could not be held liable for plaintiff's injuries.[11] Plaintiff responded to this argument by asserting that defendant owed him a duty of care "because of the special relationship created by the hiring of security guards," and that in any event defendant had a duty to protect plaintiff once plaintiff's wife provided defendant with notice of the "potential problem prior to its occurrence."

While the appeal was pending, the First District Court of Appeal, Division Four, issued its opinion in *Mata, supra,* 105 Cal.App.4th 1121. In that case (further described *post*, at pp. 247–248), a bar proprietor employed a guard, and while the guard was on a break a customer, after being told to leave by the proprietor, walked outside and fired gunshots through the front door of the bar, killing one person and wounding others. (105 Cal.App.4th at pp. 1125–1127.) The patron's survivors sued the proprietor on a premises liability theory. The Court of Appeal in *Mata* concluded that the suit should

because of a lack of time or the character of the conduct to be expected, it will not be effective to give protection. [¶] A failure by the proprietor to perform any such duty of care is negligence. The proprietor does not have a duty to control the misconduct of third persons which the proprietor has no reason to anticipate, or no reasonable opportunity or means to prevent, or which occurs on property neither owned, possessed nor controlled by the proprietor."

[10] The trial court refused a broad instruction requested by defendant that would have informed the jury that "[v]iolent criminal conduct of a third party is not foreseeable to a restaurant owner unless there [have] been prior incidents of similar violent crime on the premises."

[11] In addition, defendant renewed its allegation that the evidence was insufficient to support the jury's findings concerning negligence and causation, and further asserted that the trial court committed instructional error in refusing its proposed special instruction, quoted *ante*, at footnote 10. Plaintiff cross-appealed, raising issues concerning the proper measure of damages.

not be resolved in favor of the defendant proprietor on summary judgment, but instead should proceed to trial. (*Id.*, at pp. 1129–1130.) In reaching that determination, the Court of Appeal reasoned that because the proprietor "employed a security guard . . . , and that guard was on duty" when the criminal assault and murder occurred, "[t]he duty to protect had already been assumed and therefore the issue of foreseeability becomes irrelevant." (*Id.*, at p. 1128; see also *id.*, at p. 1129.)

The Court of Appeal below, responding to *Mata, supra,* 105 Cal.App.4th 1121, expressly disagreed with the proposition that merely because a bar proprietor employs guards or implements other similar measures, it thereby "assumes" a duty to protect its patrons while they are on the premises. The Court of Appeal below further disagreed with *Mata*'s conclusion that such an assumed duty renders the issue of foreseeability "irrelevant." Instead, the Court of Appeal held that "genuine foreseeability" of the "particular criminal conduct" involved—here, an attack by up to five men, followed immediately by an attack by 12 to 20 additional men—was required in order to impose a legal duty of care upon defendant. Proceeding to apply that test, the Court of Appeal concluded that although there was evidence establishing that prior fights had erupted in the Trax bar parking lot, there was no evidence of any previous "coordinated gang attack" by "a large group of assailants lying in wait in the parking lot." Having found no evidence of any prior *similar* criminal incident that would have put defendant on notice that such an occurrence reasonably might be anticipated, the Court of Appeal concluded that the attack upon plaintiff was unforeseeable and that defendant owed no duty to employ guards to protect plaintiff.

The Court of Appeal's opinion acknowledged (i) Nichols's testimony that plaintiff's wife told Nichols of an impending fight involving her husband, and (ii) Joseph's testimony to the effect that those who ultimately assisted in the attack upon plaintiff had been, in the lower court's words, "visible and loitering in the parking lot as a group, contrary to [defendant's] acknowledged policy of dispersing such gatherings." The Court of Appeal, however, dismissed this evidence as "insufficient to establish a duty on the part of [defendant] to prevent or intervene in" the assault upon plaintiff. Accordingly, the Court of Appeal reversed the judgment in favor of plaintiff.

We granted review to address and resolve the conflict in these decisions of the First District and Fifth District Courts of Appeal.

## II

Although "[a]s a general principle, a 'defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all

risks which make the conduct unreasonably dangerous' " (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 434–435 [131 Cal.Rptr. 14, 551 P.2d 334] (*Tarasoff*); see generally Civ. Code, § 1714; *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 716 [110 Cal.Rptr.2d 528, 28 P.3d 249], and authorities cited), it also is well established that, as a general matter, there is no duty to act to protect others from the conduct of third parties. (*Tarasoff, supra,* 17 Cal.3d 425, 435; see also *Paz v. State of California* (2000) 22 Cal.4th 550, 558 [93 Cal.Rptr.2d 703, 994 P.2d 975] (*Paz*); *Williams v. State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137] (*Williams*); Rest.2d Torts, § 314.)[12] But as explained, *post,* courts have recognized exceptions to the general no-duty-to-protect rule, one of which—the "special relationship" doctrine—is dispositive in this case.[13]

A defendant may owe an affirmative duty to protect another from the conduct of third parties if he or she has a "special relationship" with the other person. (See 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 858–866, pp. 220–233; 2 Dobbs, The Law of Torts (2001) §§ 317, 322–332 (Dobbs on Torts).) Courts have found such a special relationship in cases involving the relationship between business proprietors such as shopping centers, restaurants, and bars, and their tenants, patrons, or invitees. Accordingly, in *Ann M.,* we recognized as "well established" the proposition that a proprietor's "general duty of maintenance, which is owed to tenants and patrons, . . . include[*s*] *the duty to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures.*" (*Ann M., supra,* 6 Cal.4th 666, 674, italics added; see also *Kentucky Fried Chicken of Cal., Inc. v. Superior Court* (1997) 14 Cal.4th 814, 819, & 823–824 [59 Cal.Rptr.2d 756, 927 P.2d 1260] (*Kentucky Fried Chicken*) [proprietor who has reason to believe, from observation or experience, that the conduct of

---

[12] As we explained in *Tarasoff,* "[t]his rule derives from the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter. (See Harper & Kime, *The Duty to Control the Conduct of Another* (1934) 43 Yale L.J. 886, 887.) Morally questionable, the rule owes its survival to 'the difficulties of setting any standards of unselfish service to fellow men, and of making any workable rule to cover possible situations where fifty people might fail to rescue . . . .' (Prosser, Torts (4th ed. 1971) § 56, p. 341.)" (*Tarasoff, supra,* 17 Cal.3d at p. 435, fn. 5.)

[13] In the course of our consideration of this matter, we solicited briefing upon the potential relevance and effect upon this case of a second exception to the no-duty-to-protect rule—the so-called negligent undertaking doctrine. Because we conclude that the issue before us can be resolved under the special relationship doctrine alone, we need not and do not analyze or apply the negligent undertaking doctrine except as necessary to explain and distinguish *Mata, supra,* 105 Cal.App.4th 1121—the decision with which, as noted earlier, the Court of Appeal below disagreed. (See *post,* pt. IV.)

another endangers an invitee has a duty to take reasonable steps to protect the invitee]; *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806 [205 Cal.Rptr. 842, 685 P.2d 1193] [a special relationship exists between "a possessor of land and members of the public who enter in response to the landowner's invitation"]; *Taylor, supra,* 65 Cal.2d 114, 121 [a business proprietor has a "duty to take affirmative action to control the wrongful acts of third persons which threaten invitees where the [proprietor] has reasonable cause to anticipate such acts and the probability of injury resulting therefrom"; further described *post,* at p. 241]; Rest.2d Torts, § 344.)[14]

### A.   *The special-relationship-based duty to provide security guards*

In a series of cases we have addressed the narrow question of when the scope of a proprietor's special-relationship-based duty to patrons or invitees properly can be found to include a duty to provide security guards.

In *Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653] (*Isaacs*), we suggested that a proprietor (there, a hospital) might have a duty to provide guards to protect patrons and invitees (in that case, a physician who practiced at the hospital) from criminal attacks by third parties upon the premises, so long as such an attack was reasonably foreseeable "in light of all the circumstances." (*Id.,* at pp. 126–129.) This formulation left open the possibility that a proprietor might have a duty to provide guards to protect against third party conduct, even in the absence of prior similar conduct putting the proprietor on notice of the need to protect against such conduct.

In *Ann M., supra,* 6 Cal.4th 666, we expressly retreated from the open-ended formulation set forth in *Isaacs.* In *Ann M.* the plaintiff, an employee who worked at a business located in a shopping center, was raped during business hours by a person who entered her place of employment. In

---

[14] In addition to the relationship between proprietors and their tenants, patrons, or invitees, special relationships triggering a duty to protect another from foreseeable injury caused by a third party have been found in other contexts, including those of (i) common carriers and passengers, (ii) innkeepers and their guests, and (iii) mental health professionals and their patients. (See generally 6 Witkin, *supra,* Summary of Cal. Law, Torts, § 859, p. 223 et seq.; Flahavan et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2004) ¶¶ 2:856 to 2:875.4; 2 Dobbs on Torts, *supra,* §§ 317, 322–332; Rest.2d Torts, § 314A.) We addressed the latter special relationship in *Tarasoff, supra,* 17 Cal.3d 425, in which we concluded that in the circumstances of that case—in which a patient had informed his mental health therapist of the patient's plan to kill another person—a special relationship was established that imposed upon the therapist a duty to take steps designed to protect the intended victim. (*Id.,* at p. 435 et seq.)

asserting premises liability against the defendant shopping center, the plaintiff alleged that the defendant's duty to maintain common areas in a reasonably safe condition included an obligation to provide guards in those areas. On the facts there presented, we concluded that the scope of the proprietor's duty did not include an obligation to provide such guards, and held that the trial court properly had granted summary judgment for the defendant.

We began our discussion in *Ann M.* by noting several basic legal propositions relating to the question of duty. We observed that the existence of a legal duty is a question of law for the court to determine (*Ann M., supra*, 6 Cal.4th at p. 674), that foreseeability is a "crucial factor" in determining the existence and scope of a legal duty (*id.*, at p. 676),[15] and that "[f]oreseeability, when analyzed to determine the existence or scope of a duty, is a question of law to be decided by the court" (*Ann M.*, at p. 678). We also acknowledged the "well established" rule that commercial proprietors (because they generally stand in a special relationship with their tenants, patrons, or invitees) are required to "maintain land in their possession and control in a reasonably safe condition" and that this general duty includes taking "reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures." (*Ann M.*, at p. 674, and cases cited.)

Explicating the proper approach to foreseeability analysis in relation to a business proprietor's duty to provide protection for patrons and invitees from third party crime, we stated in *Ann M.*: "[B]efore and after our decision in *Isaacs*, we have recognized that the scope of the duty is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed. (*Isaacs, supra*, 38 Cal.3d at p. 125.) ' "[I]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be

---

[15] We also pointed out in *Ann M.* that, in addition to foreseeability, other factors "that courts consider in determining the existence and scope of a duty in a particular case are: '. . . the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Ann M., supra*, 6 Cal.4th at p. 675, fn. 5, quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561].) Although, as we noted in *Tarasoff, supra,* 17 Cal.3d 425, 434, "[t]he most important of these considerations in establishing duty is foreseeability," as we explained in *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1190, footnote 2 [91 Cal.Rptr.2d 35, 989 P.2d 121] (*Sharon P.*), "[t]hese other factors may dictate against expanding the scope of a landowner's duty to include protecting against third party crime, even where there is sufficient evidence of foreseeability."

required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required." [Citation.]' [Citation.] Or, as one appellate court has accurately explained, duty in such circumstances is determined by a balancing of 'foreseeability' of the criminal acts against the 'burdensomeness, vagueness, and efficacy' of the proposed security measures. (*Gomez v. Ticor* [(1983)] 145 Cal.App.3d [622,] 631 [193 Cal.Rptr. 600].)" (*Ann M., supra,* 6 Cal.4th at pp. 678–679.)

■ Turning to the plaintiff's specific claim that the proprietor's duty to reasonably secure the premises against foreseeable criminal acts of third parties included, in the circumstances there presented, a legal obligation to provide guards, we stated in *Ann M.* that although "there may be circumstances where the hiring of security guards will be required to satisfy a landowner's duty of care, such action will rarely, if ever, be found to be a 'minimal burden.' The monetary costs of security guards is not insignificant. Moreover, the obligation to provide patrols adequate to deter criminal conduct is not well defined. 'No one really knows why people commit crime, hence no one really knows what is "adequate" deterrence in any given situation.' [Citation.] Finally, the social costs of imposing a duty on landowners to hire private police forces are also not insignificant. [Citation.] For these reasons, we conclude that *a high degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards.* We further conclude that the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises.[16] To hold otherwise would be to impose an unfair burden upon landlords and, in effect, would force landlords to become the insurers of public safety, contrary to well-established policy in this state. [Citations]." (*Ann M., supra,* 6 Cal.4th 666, 678–679, italics added.)[17]

Thereafter, in *Sharon P., supra,* 21 Cal.4th 1181, we further elaborated upon the principles set forth in *Ann M.* In *Sharon P.,* the plaintiff was

---

[16] At this point, we observed in a footnote that evidence other than prior similar crimes occurring on the proprietor's premises might be adequate to establish foreseeability. We stated: "It is possible that some other circumstances such as immediate proximity to a substantially similar business establishment that has experienced violent crime on its premises could provide the requisite degree of foreseeability. Because Ann M. presented no such evidence, we need not further consider this possibility." (*Ann M., supra,* 6 Cal.4th at p. 679, fn. 7.)

[17] At the close of our opinion in *Ann M.* we observed in a footnote that the plaintiff had "offered no evidence to show that, like a parking garage or an all-night convenience store, a retail store located in a shopping center creates ' "an especial temptation and opportunity for criminal misconduct." ' [Citations.] Therefore, we need not consider in this case whether some types of commercial property are so inherently dangerous that, even in the absence of prior similar incidents, providing security guards will fall within the scope of a landowner's duty of care." (*Ann M., supra,* 6 Cal.4th at p. 680, fn. 8.)

assaulted and raped shortly after parking her car in a dimly lighted garage located beneath the building in which she was employed. Although there had been recent robberies in a nearby bank, and assorted other crimes within a 50-block area surrounding the underground parking garage, there was no evidence of the occurrence of crimes similar to the assault upon the plaintiff in or near the parking garage—and indeed, no evidence of any crimes in the parking garage during the previous 10 years. After the plaintiff sued the owners and operators of the parking garage, the trial court granted the defendants' motion for summary judgment. (*Sharon P.*, at pp. 1185–1187.) The Court of Appeal, in a divided opinion, reversed on the basis that commercial underground parking structures are "inherently dangerous" and, notwithstanding the absence of prior similar incidents of assaults in or near the parking garage, a jury should be allowed to determine whether the defendant's duty to provide reasonable security included an obligation to provide guards or other similar measures. (*Id.*, at pp. 1187–1188.)[18]

We granted review in *Sharon P.* and ultimately reversed the Court of Appeal's decision in that case. We found the evidence of prior crimes insufficiently similar to the violent assault upon the plaintiff to "establish a high degree of foreseeability that would justify . . . imposition of . . . an obligation" on the defendants' part "to provide security guards in their garage." (*Sharon P., supra,* 21 Cal.4th at p. 1191; see also *id.*, at p. 1195.) We also rejected, as legally unsupported and contrary to sound public policy, the Court of Appeal's conclusion that underground parking facilities are, as a matter of law, "inherently dangerous," and hence that those who own or control them must provide guards. (*Id.*, at pp. 1191–1195.) Finally, we addressed the plaintiff's contention that the defendants had an obligation to undertake *other,* assertedly less burdensome security measures, such as ensuring that the garage was brightly lighted and clean, activating and monitoring previously installed security cameras, and requiring existing personnel to walk periodically through the garage. (*Id.*, at pp. 1195–1199.) We questioned whether such other measures, in reality, would be significantly less burdensome than the hiring of guards (*id.*, at pp. 1196–1197), and applied the heightened foreseeability test: "[A]bsent any prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location,[19]

---

[18] As observed *ante*, at footnote 17, we had mentioned the possibility of such an approach in *Ann M., supra*, 6 Cal.4th at page 680, footnote 8.

[19] The disjunctive phrase was employed to acknowledge that, even in the absence of evidence of prior similar crimes on the defendant's premises, *other* circumstances—for example, similar violent crime occurring on the premises of a nearby and substantially similar business establishment (*Ann M., supra*, 6 Cal.4th at p. 679, fn. 7, quoted *ante*, at fn. 16)—might provide the requisite heightened degree of foreseeability.

we cannot conclude defendants were required to secure the area against such crime." (*Sharon P.*, at p. 1199.)[20]

In summary, as explained in *Ann M., supra*, 6 Cal.4th 666, and *Sharon P., supra*, 21 Cal.4th 1181, only when "heightened" foreseeability of third party criminal activity on the premises exists—shown by prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location—does the scope of a business proprietor's special-relationship-based duty *include an obligation to provide guards* to protect the safety of patrons. (*Ann M., supra*, 6 Cal.4th at p. 679 & fn. 7; *Sharon P., supra*, 21 Cal.4th at pp. 1190–1191, 1197–1198.)[21]

### B. *Other special-relationship-based duties*

█ Even when proprietors such as those described, *ante*, have no duty under *Ann M.* and *Sharon P.* to provide a security guard or undertake other similarly burdensome preventative measures, the proprietor is not necessarily insulated from liability under the special relationship doctrine. A proprietor that has no duty under *Ann M.* and *Sharon P.* to hire a security guard or to

---

[20] Most recently we reviewed *Ann M.*, and *Sharon P.*, in *Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1146–1148 [12 Cal.Rptr.3d 615, 88 P.3d 517] (*Wiener*). The plaintiffs in that case asserted that the defendants (a childcare center and its landlord) had a duty to provide a stronger barrier that would have protected young children who intentionally were killed while on a playground when a third party drove his car though a four-foot-high chain link fence separating the playground from a nearby street. After the trial court granted summary judgment for the defendants, the appellate court reversed. (*Id.*, at p. 1145.) On review, we concluded that the trial court properly granted summary judgment. We found no evidence of prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location. We determined that the third party criminal act in the case before us was "so outrageous and bizarre, that it could not have been anticipated under any circumstances" (*Wiener, supra*, 32 Cal.4th at p. 1150), and hence the defendants had no duty to provide a stronger fence to protect against the crime that ultimately occurred. In the process we distinguished an appellate court decision, *Robison v. Six Flags Theme Parks Inc.* (1998) 64 Cal.App.4th 1294, 1301 [75 Cal.Rptr.2d 838] (finding an amusement park proprietor liable for negligent design of a parking lot, resulting in injuries triggered by a park patron's negligent driving), and commented that the court in *Robison* had "acknowledged that our cases analyze third party criminal acts differently from ordinary negligence, and require us to apply a heightened sense of foreseeability before we can hold a defendant liable for the criminal acts of third parties." (*Wiener, supra*, 32 Cal.4th at pp. 1149–1150.) We concluded: "Without prior similar criminal acts, or even any indication of prior criminal acts or intrusions of any type in the surrounding businesses, defendants here could not have been expected to create a fortress to protect the children . . . ." (*Id.*, at p. 1151.)

[21] In such situations—in which a proprietor is legally obligated to provide guards to protect the safety of its patrons—the proprietor might be held vicariously liable for the ensuing negligence of its guard (see generally 6 Witkin, Summary of Cal. Law, *supra*, Torts, § 997, p. 388 et seq.), or for its own negligence in selecting, training, supervising, or retaining the guard (cf. *Far West Financial Corp. v. D & S Co.* (1998) 46 Cal.3d 796, 812 [251 Cal.Rptr. 202, 760 P.2d 399]).

undertake other similarly burdensome preventative measures still owes a duty of due care to a patron or invitee by virtue of the special relationship, and there are circumstances (apart from the failure to provide a security guard or undertake other similarly burdensome preventative measures) that may give rise to liability based upon the proprietor's special relationship.

For example, it long has been recognized that restaurant proprietors have a special-relationship-based duty to undertake relatively simple measures such as providing "assistance [to] their customers who become ill or need medical attention and that they are liable if they fail to act." (*Breaux v. Gino's, Inc.* (1984) 153 Cal.App.3d 379, 382 [200 Cal.Rptr. 260]; see generally Rest.2d Torts, § 314A.) Similarly, a restaurant or bar proprietor also has a duty to warn patrons of known dangers (see Rest.2d Torts, § 344) and, in circumstances in which a warning alone is insufficient, has a duty to take other reasonable and appropriate measures to protect patrons or invitees from imminent or "ongoing" criminal conduct. (*Kentucky Fried Chicken, supra,* 14 Cal.4th 814, 823.) Such measures may include telephoning the police or 911 for assistance (e.g., *Johnston v. Fontana* (La.Ct.App. 1997) 610 So.2d 1119, 1121–1122 [duty of bar proprietor]), or protecting patrons or invitees from an imminent and known peril lurking in a parking lot by providing an escort by existing security personnel to a car in that parking lot. (*Taylor, supra,* 65 Cal.2d 114, 121–125 [duty of bar proprietor]; see generally BAJI No. 8.23, quoted *ante,* at fn. 9, under which the jury in this case was instructed.) Moreover, as especially relevant to the present case, California decisions long have recognized, under the special relationship doctrine, that a proprietor who serves intoxicating drinks to customers for consumption on the premises must "exercis[e] reasonable care to protect his patrons from injury at the hands of fellow guests" (*Saatzer v. Smith* (1981) 122 Cal.App.3d 512, 518 [176 Cal.Rptr. 68] (*Saatzer*)), and that such a duty " 'arises . . . when one or more of the following circumstances exists: (1) A tavern keeper allowed a person on the premises who has a known propensity for fighting; (2) the tavern keeper allowed a person to remain on the premises whose conduct had become obstreperous and aggressive to such a degree the tavern keeper knew or ought to have known he endangered others; (3) the tavern keeper had been warned of danger from an obstreperous patron and failed to take suitable measures for the protection of others; (4) the tavern keeper failed to stop a fight as soon as possible after it started; (5) the tavern keeper failed to provide a staff adequate to police the premises;[22] and (6) the tavern keeper tolerated disorderly conditions [citations].' " (*Saatzer, supra,* 122 Cal.App.3d at p. 518; see also *Slawinski v. Mocettini* (1963) 217 Cal.App.2d 192, 196 [31 Cal.Rptr. 613], and authorities cited.)

---

[22] This aspect of the special relationship duty of bar proprietors relates to, and may overlap, the more general duty (discussed, *ante,* in pt. II.A) of business proprietors to provide guards to protect the safety of patrons under limited circumstances.

*Taylor, supra,* 65 Cal.2d 114, illustrates how these principles are applied. In that case the plaintiff, a female bar patron, twice was offensively propositioned by a male patron. Although the plaintiff rebuffed the male patron's advances, she testified she felt she had no reason to fear him. (*Id.,* at p. 118.) The bar employed a bouncer, who observed and overheard these encounters. Later, as the plaintiff prepared to leave when the bar was closing, the bouncer warned her not to " 'go outside because that goofball is out there.' " (*Ibid.*) The plaintiff replied that it was late and that she needed to depart for home so she later could go to work. The bouncer then walked the plaintiff to the bar door but did not escort her to her car in the parking lot. Upon arriving at her car in the lot, the plaintiff was attacked by the male bar patron and severely injured. The plaintiff sued the bar, claiming it was negligent in failing to provide her with adequate protection from a known danger of imminent criminal assault. After presentation of the evidence, the trial court issued a directed verdict for the bar. This court reversed, concluding from the evidence that the defendant's bouncer "must have been apprised of the potential danger to plaintiff of assault by 'the goofball' "; that the bouncer's warning did not adequately apprise the plaintiff of the imminent danger she faced and she had a right to depart from the bar when she elected to do so; and that the bouncer "could have easily protected her from the danger he apparently anticipated by simply accompanying [the] plaintiff to her car." (*Id.,* at pp. 123–124.) Accordingly, we held, it was a question for the jury whether the bouncer's "mere admonition not to enter the parking lot because 'that goofball is out there' " satisfied the defendant's special-relationship-based duty to the plaintiff. (*Id.,* at p. 124.)

### III

We now apply to the case before us the principles discussed above. We shall conclude, contrary to the Court of Appeal below, that defendant owed a duty to plaintiff pursuant to the special relationship doctrine. Prior to doing so, however, we first address a preliminary point advocated by defendant.

### A. *Is "heightened foreseeability" always required when a plaintiff seeks to impose a special-relationship-based duty upon a proprietor?*

Defendant, supported by an amicus curiae on its behalf, asserts that a showing of heightened foreseeability as defined by *Ann M.* and its progeny *always* is required when a plaintiff seeks to impose special-relationship-based liability upon a proprietor related to the criminal conduct of a third party. In support, defendant and amicus curiae rely upon *Hassoon v. Shamieh* (2001) 89 Cal.App.4th 1191 [107 Cal.Rptr.2d 658] (*Hassoon*).

In *Hassoon* a customer, the plaintiff, was inside a grocery store at night when he and the store's employee noticed a man—known to be a drug dealer—being beaten on the sidewalk by a group of fellow drug dealers. The store's employee rescued the victim and brought him inside while the attackers remained outside. Soon thereafter shots were fired into the store, injuring the customer, who subsequently sued the proprietors and the employee, claiming that the proprietors' employee acted negligently in rescuing the victim and thereby exposing the customer to the ensuing gunshots fired from outside the store. (*Hassoon, supra,* 89 Cal.App.4th at pp. 1193–1194.)

Clearly, the facts in *Hassoon* did not implicate a proprietor's possible obligation to provide guards or take other similarly burdensome action designed to prevent future crime, but instead concerned only a proprietor's asserted duty to *refrain* from rescuing a crime victim in the face of unfolding criminal activity on or near the premises and from thereby putting the customer in danger. Nevertheless, in affirming summary judgment in favor of the defendants on three separate grounds,[23] the Court of Appeal in *Hassoon* broadly stated as its first ground that "the absence of proof of prior similar incidents at defendants' place of business is fatal to a successful damages claim in tort" and "means the shooting was not foreseeable." (*Hassoon, supra,* 89 Cal.App.4th at p. 1195.) In addition, the Court of Appeal asserted that "the requirement of 'prior similar incidents' is . . . a factual precondition to premises liability." (*Id.,* at p. 1196.)

This aspect of the decision in *Hassoon*—and the similarly broad position advanced by defendant and amicus curiae on its behalf, as well as by the dissenting opinions in this case—is facially inconsistent with our decisions in *Ann M., supra,* 6 Cal.4th 666, and its progeny, all of which, when articulating and applying the heightened foreseeability doctrine, expressly reaffirm the sliding-scale balancing formula articulated prior to and in our decision in *Isaacs, supra,* 38 Cal.3d 112, 125, under which we have recognized that, as a general matter, imposition of a high burden requires heightened foreseeability, but a minimal burden may be imposed upon a showing of a lesser degree of foreseeability. (See *ante,* at p. 237, quoting *Ann M., supra,* 6 Cal.4th at pp. 678–679, which in turn quoted and followed both *Isaacs, supra,* 38 Cal.3d 112, 125, and *Gomez v. Ticor, supra,* 145 Cal.App.3d 622, 631; *Sharon P., supra,* 21 Cal.4th at p. 1195 [same]; *Wiener, supra,* 32 Cal.4th at pp. 1146–1147 [same; described *ante,* at fn. 20]; see also *Kentucky Fried Chicken, supra,* 14 Cal.4th 814, 819.)[24]

---

[23] In affirming the granting of summary judgment, the court in *Hassoon* clearly reached the correct *result* on its facts: Under *Rowland v. Christian, supra,* 69 Cal.2d 108 (quoted *ante,* at fn. 15), the proprietors had no duty to refrain from rescuing a person being beaten in their presence. (*Hassoon, supra,* 89 Cal.App.4th at pp. 1197–1199.)

[24] Restating the sliding-scale balancing formulation and integrating the holdings of our most recent cases, we observe that the guiding principles are these: In circumstances in which the

■ Accordingly, to the extent *Hassoon v. Shamieh, supra,* 89 Cal.App.4th 1191, 1195, suggests that a showing of heightened foreseeability is required in all premises liability cases—regardless of the extent of the burden sought to be imposed upon the defendant—that aspect of *Hassoon* is disapproved.

## B. *Special-relationship analysis*

Turning to the application of the special relationship doctrine in the case before us, it is undisputed that defendant, a bar proprietor, stood in a special relationship with plaintiff, its patron and invitee, and hence owed a duty to undertake "reasonable steps to secure common areas against foreseeable criminal acts of third parties that [were] likely to occur in the absence of such precautionary measures" (*Ann M., supra,* 6 Cal.4th 666, 674) and to take such "appropriate action as is reasonable under the circumstances to protect patrons." (*Kentucky Fried Chicken, supra,* 14 Cal.4th 814, 823; see also *id.,* at p. 819; *Taylor, supra,* 65 Cal.2d 114, 121 [proprietor has duty "to take affirmative action to control the wrongful acts of third persons which threaten invitees"] and cases cited; *Saatzer, supra,* 122 Cal.App.3d at p. 518.)

To the extent plaintiff's special-relationship-based claim rests upon an assertion that defendant was legally required to provide a guard or guards or to undertake any similarly burdensome measures, we initially must consider whether defendant was obligated to do so under *Ann M.* and *Sharon P.* In this respect, of course, plaintiff was required to demonstrate heightened foreseeability in the form of prior similar criminal incidents (*or* other indications of a reasonably foreseeable risk of violent criminal assaults in the bar or its parking lot—see *ante,* at fn. 19).

---

burden of preventing future harm caused by third party criminal conduct is great or onerous (as when a plaintiff, such as in *Ann M.,* asserts the defendant had a legal duty to provide guards or undertake equally onerous measures, or as when a plaintiff, such as in *Sharon P.* or *Wiener,* asserts the defendant had a legal duty to provide bright lighting, activate and monitor security cameras, provide periodic "walk-throughs" by existing personnel, or provide stronger fencing), heightened foreseeability—shown by prior similar criminal incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location—will be required. By contrast, in cases in which harm can be prevented by simple means or by imposing merely minimal burdens, only "regular" reasonable foreseeability as opposed to heightened foreseeability is required.

Contrary to the suggestion in Justice Kennard's dissenting opinion (*post,* at pp. 255–256), there is nothing new or "different" in this formulation; indeed, as noted, *ante,* this general approach has been repeatedly set forth in numerous prior opinions spanning at least two decades, and was most recently—and *unanimously*—reaffirmed only last year in *Wiener, supra,* 32 Cal.4th at pages 1146–1147.

In considering whether plaintiff made such a showing, we reject the suggestion of the Court of Appeal below that in order to establish heightened foreseeability under *Ann M.*, plaintiff was required to produce evidence not only of prior similar criminal assaults, but of "a coordinated gang attack on an individual patron." Heightened foreseeability is satisfied by a showing of prior *similar* criminal incidents (or other indications of a reasonably foreseeable risk of violent criminal assaults in that location) and does not require a showing of prior *nearly identical* criminal incidents. (See *Claxton v. Atlantic Richfield Co.* (2003) 108 Cal.App.4th 327, 339 [133 Cal.Rptr.2d 425] [plaintiff victim of a violent and racially motivated crime committed at a gas station established heightened foreseeability by demonstrating that the premises had been the scene of numerous recent violent crimes, although none of those prior crimes was a racially motivated crime].)

Although the record refers to a few prior altercations between patrons, we agree with the conclusion of the Court of Appeal below that plaintiff produced insufficient evidence of heightened foreseeability in the form of prior similar incidents or other indications of a reasonably foreseeable risk of a violent criminal assault on defendant's premises that would have imposed upon defendant an obligation to provide any guard, or additional guards, to protect against third party assaults. But the absence of heightened foreseeability in this case merely signifies that defendant owed no special-relationship-based duty to provide guards or undertake other similarly burdensome preventative measures; it does not signify that defendant owed no *other* special-relationship-based duty to plaintiff, such as a duty to respond to events unfolding in its presence by undertaking reasonable, relatively simple, and minimally burdensome measures. Indeed, the record clearly establishes the existence of such a minimally burdensome duty here.

As noted earlier, the trial record contains evidence that defendant's employee and guard, Nichols, was aware of facts that led him to conclude, at least a few minutes prior to the occurrence of the assault (and prior to plaintiff's departure from the bar), that a fight was likely to occur between Joseph and his three or four companions and plaintiff, absent some intervention on Nichols's part. The record also establishes that Nichols formed the opinion that in order to avoid an altercation it was necessary to separate plaintiff from Joseph and his group by removing plaintiff from the bar while simultaneously leaving Joseph and his group inside, and that in order to put that plan into action Nichols approached plaintiff and directed him to depart from the bar.

Having considered the *Rowland* factors (*Rowland v. Christian, supra,* 69 Cal.2d 108, 113, quoted *ante,* at fn. 15) as they apply to these circumstances, we conclude, first, that under the circumstances it was foreseeable that an

assault would occur absent separation of Joseph and his group from plaintiff. The remaining *Rowland* factors similarly support a determination that defendant had a special-relationship-based duty to respond to the unfolding events by taking reasonable, relatively simple, and minimally burdensome steps in order to address the imminent danger that Nichols perceived, and, specifically, in order to accomplish the separation that he had determined was necessary. Indeed, defense counsel essentially conceded this general point during oral argument before this court—responding with the words "Certainly. Certainly" to a question whether, in light of the circumstances then known to Nichols, there was "some minimal duty" on the part of defendant.[25]

Such minimally burdensome measures may have included, for example, Nichols attempting to maintain the separation between plaintiff and Joseph's group that Nichols had determined was called for in order to avoid an imminent assault, by turning his attention to Joseph and his companions in order to dissuade them from following plaintiff (who, at Nichols's direction, was departing from the bar).[26] And, in the face of the continuing threat of a five-on-one altercation if Nichols were unable to dissuade Joseph and his

---

[25] The following exchange occurred at oral argument:

Justice Werdegar: "Now the Court of Appeal [below], as I recall, said flatly that your client had no duty."

Defense counsel: "Correct."

Justice Werdegar: "May I ask you . . . doesn't the law allow for a duty to behave reasonably as events unfold, and we've had discussion about what those events were, including . . . a member of the staff telling the victim to leave—is there not a duty to behave reasonably, however that would be defined and whatever the foreseeability might be—but to do something?"

Defense counsel: "Sure, and as I think your honor said in *Sharon P.,* . . . you can't have a strict similar incident test, . . . there has to be some reasonable . . . ."

Justice Werdegar: "[N]ow I'm not talking about anything that had occurred previously, I'm talking about what was happening at this time."

Defense counsel: "Right."

Justice Werdegar: *"There was tension, there was a group, a member of the staff saw sufficiently to tell the victim to leave . . . . [W]ouldn't there be some minimal duty within that context, [even] if nothing had ever happened in this establishment before?"*

Defense counsel: *"Certainly. Certainly.* But I, again I, which leads us to whether or not that . . . duty would extend to protecting this gentleman from . . . what he suffered." (Italics added.)

[26] We stress that, in light of the clear foreseeability of an imminent assault absent separation of Joseph and his group from plaintiff, defendant's duty was to *attempt* to dissuade Joseph and his group from following plaintiff. Contrary to implications in Justice Kennard's dissenting opinion, we do not suggest that defendant had a duty to guarantee that separation, or, for that matter, to prevent any resulting attack and injury to plaintiff.

The question whether the ultimate group attack upon plaintiff in the parking lot would not have occurred had Nichols successfully dissuaded Joseph and his companions from following plaintiff implicates the sufficiency of the evidence to support the jury's implied findings of breach of duty and causation—issues that are not relevant to, and do not influence, our analysis of whether defendant owed a duty of care under the circumstances.

companions from following plaintiff outside, defendant also might have confirmed that the outside guard was at his *post* in the parking lot and was available, as necessary, to help maintain the desired separation between plaintiff and Joseph and his companions. (See *Taylor, supra,* 65 Cal.2d 114, 123–125 [duty of bar proprietor to respond to imminent criminal conduct]; *Kentucky Fried Chicken, supra,* 14 Cal.4th 814, 823 [restaurant proprietor has a duty to respond to ongoing conduct by taking "such appropriate action as is reasonable under the circumstances to protect patrons"]; *Saatzer, supra,* 122 Cal.App.3d 512, 518 [a bar proprietor's duty to protect patrons " 'arises . . . when . . . the tavern keeper had been warned of danger from an obstreperous patron and failed to take suitable measures for the protection of others' "].)[27]

## IV

As noted at the outset of this opinion, we granted review in this matter largely in light of the conflict between the Court of Appeal opinion in this case and the earlier Court of Appeal opinion in *Mata, supra,* 105 Cal.App.4th 1121. To avoid similar conflict and confusion in future cases, we believe it is appropriate at this time to address the *Mata* decision and to explain why we, like the Court of Appeal, find some of the language and analysis of *Mata* to be overbroad and potentially misleading.

---

[27] In reaching a contrary conclusion, Justice Kennard's dissenting opinion asserts that "the existence and scope of a business owner's duty to protect against a threat of future criminal activity, imminent or otherwise, *depends on the foreseeability of the sort of criminal conduct that actually occurred.* . . . As I have explained, the vicious group attack that occurred outside the restaurant was not reasonably foreseeable." (Dis. opn., *post,* at pp. 256–257, italics added.)

It is well established that the scope of a defendant's duty in this context is premised upon the danger that the defendant *knows or reasonably should anticipate,* and that the defendant's duty is simply to take reasonable steps *in light of those circumstances.* As a matter of logic, it is difficult to understand how the existence or scope of a proprietor's duty properly could depend upon the nature of the criminal conduct "that actually occurred," rather than the danger of which the defendant was or should have been aware.

In this case, the dissent appears to acknowledge that there is sufficient evidence to support a determination that defendant's employee Nichols reasonably foresaw a four- or five-on-one assault involving Joseph and his three or four companions, on the one hand, and plaintiff, on the other. The dissent apparently reasons, however, that because defendant did not and reasonably could not foresee what "actually occurred"—that is, that Joseph and his companions would gain a large number of reinforcements in the parking lot—defendant had no duty even to take the steps necessary to attempt to maintain the separation that Nichols had determined was called for to avoid the more limited group attack that Nichols actually anticipated. But the circumstance that the precise size of the actual gang attack that occurred may not have been reasonably foreseeable does not absolve defendant of the duty to take reasonable steps based upon the nature of the danger that its employee could (and, indeed, did) foresee.

As noted, *ante,* the question whether there is sufficient evidence to support the jury's implied findings that defendant breached its duty of care and that such breach was a proximate cause of plaintiff's injury is distinct from the issue addressed here—namely, whether defendant owed a duty of care to plaintiff under the circumstances of this case.

In *Mata, supra*, 105 Cal.App.4th 1121, a bar proprietor posted a guard inside the front door of its bar and armed him with a billy club and a large flashlight. The guard was instructed to monitor the number of patrons who entered the bar so as not to exceed the room's capacity, to inspect identifications in order to detect and keep out minors, to check customers for weapons, and to eject unruly customers and prevent certain "banned" customers from entering the bar or remaining on the premises. In addition, the guard was instructed to inform the bar proprietor when he needed to take a break, so that the proprietor could assume the guard's responsibilities. (*Id.*, at p. 1126.)

On the evening in question the guard on duty at the bar asked the proprietor's brother to assume his post while he took a restroom break. During the guard's break a customer, who previously had been banned from the bar and yet, earlier that same evening, had returned to and been ejected from the bar, returned yet again to the bar and, after again being told to leave, walked outside and immediately fired gunshots through the front door of the bar, killing one person and wounding others. (*Mata, supra*, 105 Cal.App.4th at pp. 1125–1127.) The surviving relatives of the patron who was killed and other injured patrons and their relatives sued the proprietor on a premises liability theory.

Overturning the trial court's grant of summary judgment for the defendant, the Court of Appeal in *Mata* asserted that "*Ann M.* is inapposite as to [the proprietor's liability] because [the proprietor] employed a security guard . . . , and that guard was on duty [when the criminal assault and murder occurred]." (*Mata, supra*, 105 Cal.App.4th at p. 1128.) The court in *Mata* continued, very broadly: "*The duty to protect had already been assumed* and *therefore the issue of foreseeability becomes irrelevant.*" (*Ibid.*, italics added; see also *id.*, at p. 1129.)

Within the context of the special relationship doctrine, this broad language is potentially misleading. Contrary to the suggestion that "the issue of foreseeability becomes irrelevant" whenever a proprietor has employed a security guard (*Mata, supra*, 105 Cal.App.4th at p. 1128), the foreseeability of the criminal conduct in question remains relevant to the existence and scope of a proprietor's duty under the special relationship doctrine. For example, foreseeability remains highly relevant in determining the existence and scope of any duty, discussed, *ante*, to warn of dangers or to take appropriate measures to protect patrons or invitees from *ongoing* or *imminent* criminal conduct.

Based upon the language quoted, *ante*, it also appears that the Court of Appeal's determination in *Mata, supra*, 105 Cal.App.4th 1121, that a duty existed in that case, may have been influenced by the appellate court's understanding of a related but separate doctrine—the negligent undertaking

doctrine. Our cases establish that a volunteer who, having no initial duty to do so, undertakes to provide protective services to another, will be found to have a duty to exercise due care in the performance of that undertaking if one of two conditions is met: either (a) the volunteer's failure to exercise such care increases the risk of harm to the other person, or (b) the other person reasonably relies upon the volunteer's undertaking and suffers injury as a result.[28] Even if the court in *Mata* may have been influenced by that doctrine, however, the decision's broad language failed to recognize the important limitations and qualifications of that doctrine.

*Mata* indicated in expansive terms that by hiring a guard a proprietor necessarily assumes a general duty to protect its patrons. We disagree. First, the scope of any duty assumed depends upon the nature of the undertaking. (See *Artiglio, supra*, 18 Cal.4th 604, 614–615.) Merely because a supermarket or other similar enterprise "chooses to have a security program" that includes provision of a roving security guard does not signify that the proprietor has assumed a duty to protect invitees from third party violence. (*Brown v. Schnuck Markets, Inc.* (Mo.Ct.App. 1998) 973 S.W.2d

---

[28] See *Williams, supra*, 34 Cal.3d 18, 23 et seq. (discussing circumstances in which police officers will be found to have undertaken an affirmative duty owed to members of the public); *Weissich v. County of Marin* (1990) 224 Cal.App.3d 1069, 1077 [274 Cal.Rptr. 342] ("Liability may be imposed on a person who has no general duty to act, but who has voluntarily assumed a protective duty toward an individual and undertakes action on his or her behalf, thereby inducing reliance"); see also *Schwartz v. Helms Bakery, Ltd.* (1967) 67 Cal.2d 232, 238–244 [60 Cal.Rptr. 510, 430 P.2d 68] (describing the negligent undertaking theory of liability as "[f]irmly rooted in the common law," and finding that liability could be premised upon a breach of the duty undertaken); see generally *Paz, supra*, 22 Cal.4th 550, 558–562 (recognizing potential duty to act pursuant to the negligent undertaking doctrine, but finding no such undertaking, and hence no duty, in litigation concerning delayed installation of a traffic signal); *Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 613–618 [76 Cal.Rptr.2d 479, 957 P.2d 1313] (*Artiglio*) (recognizing potential duty to act pursuant to the negligent undertaking doctrine, but finding no such undertaking, and hence no duty, in litigation concerning safety of silicone breast implants); 6 Witkin, Summary of Cal. Law, *supra*, Torts, section 868, page 234; 2 Dobbs on Torts, *supra*, section 319, pages 860–864.

This negligent undertaking doctrine (sometimes referred to as the "Good Samaritan" rule, but in actuality an exception to that rule) is reflected in Restatement Second of Torts, sections 323 and 324A. Section 323 addresses cases concerning a duty assumed by a defendant to another. (See *Williams, supra*, 34 Cal.3d 18, 23; see also *Blankenship v. Peoria Park Dist.* (Ill.Ct.App. 1994) 269 Ill.App.3d 416 [647 N.E.2d 287, 291–292, 207 Ill.Dec. 325] [swimming pool operator undertook duty to provide lifeguard to protect adult swimmer]; *Feld v. Merriam* (1984) 506 Pa. 383 [485 A.2d 742, 746–747] [apartment complex landlord undertook duty to provide security guards]; *Wilson v. Texas Parks and Wildlife Dept.* (Tex. 1999) 8 S.W.3d 634, 635–636 [43 Tex. Sup. Ct. J. 634] [park district undertook to provide siren warning of impending flood]; *Nelson by and Through Stuckman v. Salt Lake City* (Utah 1996) 919 P.2d 568, 573 [state undertook to erect and maintain fence between park and nearby river].) Similarly, section 324A of the Restatement addresses cases concerning a duty assumed by a defendant to third persons. (See *Paz, supra*, 22 Cal.4th 550, 559; *Artiglio, supra*, 18 Cal.4th 604, 613–614.)

530, 535.) A store that hires a "security officer" to guard its interior "cash office" for three hours each day does not assume a duty to protect a customer who is injured in the store's exterior parking lot by the criminal act of a third party. (See *Posecai v. Wal-Mart Stores, Inc.* (La. 1999) 752 So.2d 762, 764, 769 & fn. 7.) Second, as noted, *ante*, a defendant's undertaking will support the finding of a duty to another only if (a) the defendant's action increased the risk of harm to another, or (b) the other person reasonably relied upon the undertaking to his or her detriment. (*Williams, supra*, 34 Cal.3d 18, 23; *Weissich v. County of Marin, supra*, 224 Cal.App.3d 1069, 1077.) The court in *Mata* did not consider whether the imposition of liability in that case was consistent with these limitations.

Finally, contrary to the implications of *Mata*'s broad language (*Mata, supra*, 105 Cal.App.4th at p. 1128), foreseeability remains a highly relevant factor— even in cases in which a legal duty is found (and regardless of the doctrine under which it is found). For example, even when a proprietor voluntarily has employed one or more guards and properly is found to owe a duty to patrons, foreseeability remains relevant to the fact finder's determination of breach and causation.

## V

We conclude that the Court of Appeal below erred in reversing the trial court's judgment in favor of plaintiff on the ground that defendant owed no duty to plaintiff. Instead, as explained, *ante* because defendant had actual notice of an impending assault involving Joseph and plaintiff, its special-relationship-based duty included an obligation to take reasonable, relatively simple, and minimally burdensome steps to attempt to avert that danger. Whether there was sufficient evidence to support the jury's determinations of breach of duty and causation are matters, among others, to be addressed by the Court of Appeal on remand.

The judgment of the Court of Appeal is reversed and the matter is remanded for further proceedings to permit that court to address defendant's remaining contentions as well as the issues concerning damages raised by plaintiff in his cross-appeal.

Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**KENNARD, J., Dissenting.**—In the area of torts, one of the more difficult issues is determining when a business owner owes a duty to protect others

from the criminal acts of third parties. Contributing to the complexity are considerations such as these: (1) the difficulty of predicting when and under what circumstances a criminal might strike; (2) the difficulty of determining whether the business owner should be held civilly liable for the harm caused by the third party's criminal conduct; (3) the need to avoid imposing a particularly onerous burden on business owners in poor areas where the risk of criminal activity is particularly great, as the owners will pass the burden on to customers who, because of their poverty, are less able to shoulder it; and (4) the concern that imposing too onerous a burden on business owners in poor areas may cause them to close their businesses or relocate to safer and more affluent communities, thus depriving the poor of jobs and essential services.

In this case, as plaintiff Michael Wollery Delgado was leaving defendant's restaurant, a gang of 10 to 15 men, apparently on a prearranged signal, came out of hiding and brutally attacked him. Unlike the majority, I am of the view that the business owner could not have foreseen this vicious assault and thus did not owe a duty to protect him from such an attack.

## I.

At approximately 10:00 p.m. on Saturday, November 7, 1998, plaintiff and his wife, together with two friends, went to the Trax Bar & Grill (Trax) in Turlock. They parked their car in front of, and near the entrance to, the restaurant.

Trax employed two security guards: Juan Navarro and Jason Nichols, a former police officer. Each wore a black shirt, with the word "SECURITY" in white letters on the back of the shirt.

During plaintiff's visit, another patron, Jacob Joseph, who was with three or four companions and was unknown to plaintiff, started staring at plaintiff, who stared back. Because the staring made plaintiff uncomfortable, he decided to leave. He, his wife, and their two friends walked out of the front door toward their car. Plaintiff did not anticipate any attack, and neither he nor his wife noticed anyone in the parking lot. Just before reaching the car, plaintiff heard someone yell in a foreign language; as he turned around, he saw Joseph. When Joseph got near him, Joseph again yelled in a foreign language, at which point roughly a dozen men instantly surrounded and attacked plaintiff. After getting punched, kicked, and sprayed with pepper spray, plaintiff broke free and ran across the parking lot, through a park, and into the street, where some of the assailants caught up with him and seriously injured him by hitting him with a baseball bat.

Plaintiff's wife corroborated his version of events. She testified that upon Joseph's yell, 10 to 15 men came out of nowhere, "like they had been crouched behind cars," and attacked her husband. She saw her husband break free of the initial assault, run across the parking lot, through the park, and into the street, where he was again attacked.

According to security guard Nichols, plaintiff's wife told him inside the restaurant that there was going to be a fight. When he looked over he saw plaintiff and Joseph staring at each other; the staring indicated there was going to be a fight, and he asked plaintiff to leave. As Nichols escorted plaintiff and his companions into the parking lot, one of the men who had been with Joseph came out and asked plaintiff, "What's up?" When plaintiff in turn asked, "What's up?," four men rushed toward plaintiff. Nichols grabbed the arm of one of the men; at that point some 15 men suddenly appeared from behind cars and a trash dumpster and surrounded plaintiff "like a wolf pack." In coming to plaintiff's aid, security guard Nichols was injured. Nichols saw plaintiff break free and run across the parking lot and into the street. The other guard, Juan Navarro, called 911, the emergency telephone number, to report the attack. The police responded within two to three minutes.

Called as a rebuttal witness, plaintiff's wife denied approaching security guard Nichols in the bar and warning him there was going to be a fight. She also disputed Nichols's version of events leading up to the attack.

Jacob Joseph testified that, while inside, he and plaintiff stared at each other, that after he went outside to smoke a cigarette plaintiff came out and swore at him and put up his hands as if to fight, that Joseph then yelled out something in Assyrian, whereupon a group of men attacked plaintiff. Joseph said that when he came outside, several men were already "[h]anging out in the parking lot."

Plaintiff sued defendant, the restaurant, alleging negligence. The jury found for plaintiff and awarded him $81,391.61 in damages. Defendant appealed. While the appeal was pending, the First District Court of Appeal decided *Mata v. Mata* (2003) 105 Cal.App.4th 1121 [130 Cal.Rptr.2d 141], which involved a negligence action against a business owner based on a third party's violent criminal act. *Mata* held that because the owner had employed a security guard who was working at the time of the shooting, the "duty to protect had already been assumed and therefore the issue of foreseeability becomes irrelevant" (*id.* at p. 1128), rendering it unnecessary for the plaintiff to "prove the proprietor had notice of prior similar acts" (*id.* at p. 1129). In this case, the Fifth District Court of Appeal reversed the judgment for plaintiff based on lack of a duty, and expressly disagreed with the *Mata* court's holding on foreseeability. We granted review to resolve the conflict.

I agree with the majority that the court in *Mata v. Mata, supra,* 105 Cal.App.4th 1121, erred in saying that in that case foreseeability was irrelevant. (Maj. opn., *ante,* at p. 250.) But I disagree with the majority's conclusion that defendant here owed plaintiff a duty to anticipate and take precautions against the unforeseeable violent criminal gang assault that led to plaintiff's injuries.

## II.

Did defendant business owner owe plaintiff a duty to take advance precautions to protect plaintiff from the vicious and violent gang assault he suffered? The answer is no, because the attack could not have been reasonably foreseen.

The existence and the scope of a duty owed is a question of law to be decided by the court. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*).) Whether a duty exists depends on considerations of policy. (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112–113 [70 Cal.Rptr. 97, 443 P.2d 561].) As a leading treatise has observed, duty "is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." (Prosser & Keeton, Torts (5th ed. 1984) § 53, p. 358.) Foreseeability is an important factor in determining the existence of duty. (*Ann M., supra,* 6 Cal.4th at p. 676.) It also plays a crucial role in determining proximate cause. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].) But whereas a jury decides causation, it is the court that determines whether a duty exists. (*Ibid.*) Here, the issue is one of duty, not causation.

In tort law, the question of when to impose liability against a business owner for not taking precautions against possible future criminal acts of third parties has been a vexing one. Two basic approaches have evolved, as this court explained in *Ann M., supra,* 6 Cal.4th at pages 677–679. The totality of circumstances test applies general principles of negligence; it takes into account such things as the nature, condition, and location of the premises; it views foreseeability as a question of fact that turns on the evidence. The second approach takes the view that a business owner has no duty in the absence of a prior similar incident on the premises; in other words, it views foreseeability as requiring the occurrence of a prior similar event before a duty to take precautionary measures can be imposed on the business owner. (2 Dobbs, The Law of Torts (2001) § 324, pp. 877–878.) The discussion that follows sheds some light on how this court has applied those two approaches.

In 1985, this court in *Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653] (*Isaacs*), held that the existence of a business owner's duty to anticipate criminal acts of third parties could be established, even if there had not been a prior similar incident, by considering the totality of circumstances, with foreseeability of harm being a question of fact for the jury. (*Id.* at pp. 126, 127, 130; see also *Kentucky Fried Chicken of Cal., Inc. v. Superior Court* (1997) 14 Cal.4th 814, 823–824 [59 Cal.Rptr.2d 756, 927 P.2d 1260].)

Eight years later in *Ann M., supra,* 6 Cal.4th 666, this court held that in the absence of a prior similar incident, a business owner had no duty to provide security guards to protect a plaintiff against a criminal assault by a third party. (*Id.* at p. 679.) In reaching this conclusion, *Ann M.* revisited the totality of circumstances rule this court had adopted in *Isaacs, supra,* 38 Cal.3d 112, noting there was no need in *Isaacs* to consider the viability of the prior similar incident approach in order to decide the case because the facts there disclosed ample evidence of prior third party criminal assaults. (*Ann M., supra,* 6 Cal.4th at p. 678.) *Ann M.* also observed that, contrary to the broadly worded suggestion in *Isaacs,* foreseeability in the context of duty analysis is a question of law for the court, not a question of fact for the jury. (*Ibid.*)

Six years later, in *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181 [91 Cal.Rptr.2d 35, 989 P.2d 121], we applied the prior similar incident rule of *Ann M., supra,* 6 Cal.4th 666, to a business owner's failure to provide security measures other than hiring guards. We there held that, in the absence of a prior similar incident or other evidence showing a foreseeable risk of a violent criminal assault, the business owner did not owe the plaintiff a duty to deter criminal assaults in its underground garage by keeping the garage brightly lit and clean, or by "requir[ing] existing personnel to periodically walk through the garage." (*Sharon P., supra,* at p. 1196.)

Most recently, in 2004, we applied the prior similar incident rule to hold that, in the absence of a prior similar incident, the operator of a child care center did not owe a duty to protect against a violent criminal assault by a man intentionally driving a car through a four-foot-high chain link fence onto a playground and into a group of children. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1150 [12 Cal.Rptr.3d 615, 88 P.3d 517].) We noted that "our cases analyze third party criminal acts differently from ordinary negligence, and require us to apply a heightened sense of foreseeability before we can hold a defendant liable for the criminal acts of third parties." (*Id.* at pp. 1149–1150.)

Here, in discussing the sudden, unexpected, and vicious gang attack on plaintiff, the Court of Appeal noted that "[n]othing even remotely similar" had ever occurred before on defendant's premises, and thus the assault on plaintiff could not have been foreseen. In reaching this conclusion, the Court of Appeal relied on this court's decision in *Ann M., supra,* 6 Cal.4th 666. Indeed, like the plaintiffs in *Ann M., supra,* 6 Cal.4th 666, *Sharon P. v. Arman, Ltd., supra,* 21 Cal.4th 1181, and *Wiener v. Southcoast Childcare Centers, Inc., supra,* 32 Cal.4th 1138, plaintiff here was the victim of a criminal assault by a third party. As the Court of Appeal noted, and as the majority here concedes (maj. opn., *ante,* at p. 245), there had been no prior similar attacks at Trax. Although in the past there had been some altercations between patrons, none involved gang fights or gang attacks on patrons. (See *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1212 [122 Cal.Rptr.2d 890] ["Absent foreseeability of the particular criminal conduct, there is no duty to protect plaintiff from that particular type of harm"].)

The majority here goes far beyond this court's recent decisions in *Ann M., supra,* 6 Cal.4th 666, and its progeny. Anyone reading this court's decisions in *Ann M., supra,* 6 Cal.4th 666, *Sharon P. v. Arman, Ltd., supra,* 21 Cal.4th 1181, and *Wiener v. Southcoast Childcare Centers, Inc., supra,* 32 Cal.4th 1138, would conclude that (1) the prior similar incident rule applies to premises liability claims against business owners for failing to take precautions against possible *future criminal* conduct of third parties when the conduct is a criminal assault by a third party, and that (2) as suggested in *Kentucky Fried Chicken of Cal., Inc. v. Superior Court, supra,* 14 Cal.4th at pages 823–824, the totality of circumstances rule applies when the business's owner or employees become aware that criminal conduct is *ongoing or imminent.*

Relying on certain language in *Wiener v. Southcoast Childcare Centers, Inc., supra,* 32 Cal.4th 1138, the majority announces a different rule in which the existence of a business owner's duty to prevent harm from third-party criminal acts is determined through a "sliding-scale" approach by balancing the degree of foreseeability of harm against the weight of the burden that a particular preventive measure would impose on the business owner. (Maj. opn., *ante,* at p. 243.) Turning to the facts of this case, the majority asserts that the restaurant owner had a duty to take minimally burdensome actions, such as having security guard Nichols try to dissuade Joseph from following plaintiff as he left the restaurant because some sort of criminal assault was foreseeable. (Maj. opn., *ante,* at p. 246.) Thus, instead of focusing on whether what occurred at the restaurant was foreseeable, the majority decides that

here the owner owed a duty to plaintiff because the owner's employee (the security guard) could have done something different that might have broken the causal chain of events. "While causation is an indispensable element of negligence liability, it is neither the only element, nor a substitute for 'duty.' " (*Hegyes v. Unjian Enterprises, Inc.* (1991) 234 Cal.App.3d 1103, 1134 [286 Cal.Rptr. 85].) Because there are numerous causes of any event that precede its occurrence, it is always possible to point to something that could have been done differently, and the majority's approach is perilously close to imposing liability that has no limits.

In this case, whether one applies the prior similar incident approach or the totality of circumstances approach, the result is the same: no liability on the part of the business owner. As I discussed earlier, the Court of Appeal noted the absence of any prior criminal acts similar to the gang assault here in concluding that the vicious attack on plaintiff by a gang of 10 to 15 men who suddenly came out of hiding was not an event that the owner could reasonably have foreseen, thus precluding liability.

The result is the same under the totality of circumstances approach, which applies general principles of negligence. As noted earlier, foreseeability is a crucial consideration in determining the existence of a duty. (*Ann M., supra,* 6 Cal.4th at p. 678; *Issacs, supra,* 38 Cal.3d at pp. 123–124.) It is the general character of the event that is required to be foreseeable. (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57–58 [192 Cal.Rptr. 857, 665 P.2d 947].) Here, the hostile staring by Joseph and the reported statement by plaintiff's wife that a fight seemed imminent were insufficient to alert defendant business owner to the likelihood that a brutal gang assault on plaintiff by 10 to 15 men would later occur outside the restaurant. Viewing the totality of the circumstances known to the restaurant's employees, that form of violent criminal conduct was unforeseeable.

The majority faults defendant for failing to "address the imminent danger" (maj. opn., *ante,* at p. 246) because security guard Nichols did not try to stop Joseph from leaving the restaurant. But the existence and scope of a business owner's duty to protect against a threat of future criminal activity, imminent or otherwise, depends on the foreseeability of the sort of criminal conduct that actually occurred. (See *Sharon P. v. Arman, Ltd., supra,* 21 Cal.4th at p. 1195 ["defendants' duty of care did not include the hiring of security guards for the garage because the bank robberies were not sufficiently similar to the sexual assault crime to establish a high degree of foreseeability"]; *Lopez v. McDonald's Corp.* (1987) 193 Cal.App.3d 495, 510–511 [238 Cal.Rptr. 436] [existence of prior crimes on business premises in high crime area, including two robberies, did not make massacre by armed criminal reasonably foreseeable]; *Gregorian v. National Convenience Stores, Inc.*

(1985) 174 Cal.App.3d 944, 950 [220 Cal.Rptr. 302] ["[w]hile the proprietor of an allnight convenience store may . . . reasonably anticipate that his place of business will be the target of armed robbers, the same cannot be said for a crime resulting from gang violence"].) As I have explained, the vicious group attack that occurred outside the restaurant was not reasonably foreseeable. Once the attack occurred, security guard Navarro did call 911.

To summarize: irrespective of whether one follows the prior similar incident approach, the totality of circumstances approach, or some intermediate "sliding-scale" approach, the conclusion is the same: the business owner here did not owe a duty to anticipate and protect plaintiff from the violent gang assault that occurred. Providing additional support for this conclusion are various policy considerations, as discussed below.

### III.

Thirty-seven years ago, in *Rowland v. Christian, supra,* 69 Cal.2d 108, this court articulated certain policy considerations that determine when one person (the defendant) owes a duty in tort to take an action to protect another person (the plaintiff) from harm. Those considerations are: (1) the foreseeability of the harm to the plaintiff; (2) the degree of certainty that the plaintiff suffered injury; (3) the closeness of the connection between the defendant's conduct and the plaintiff's injury; (4) the policy of preventing future harm; (5) the extent of the burden imposed on the defendant and the consequences to the community in imposing a duty to exercise care, with resulting liability in the event of a breach; and (6) the availability, cost, and prevalence of insurance for the risk involved. (*Id.* at p. 113.)

These policy considerations support a conclusion that the business owner here did not owe a duty to prevent plaintiff's injuries. As demonstrated in part II, above, here the particular harm to plaintiff was not foreseeable. Although it is undisputed that plaintiff was seriously injured in the vicious gang attack, the connection between the conduct of defendant business owner and the harm to plaintiff is highly attenuated, and very little moral blame can be attached to defendant's conduct, for it was the conduct of the *criminals*, not that of the business owner, that was primarily responsible, both legally and morally, for plaintiff's injuries. As to the burden on defendant, it is substantial. In the absence of a prior similar incident or some other indication of a reasonably foreseeable risk of a criminal assault, a business owner can only guess when, where, and how a criminal assault might occur, and what protective measures among an infinite number of possible precautions should be taken.

Particularly significant are the *adverse consequences to the community* of the duty that the majority recognizes and imposes here. Although no segment of our community is immune from violent crime, it is generally more prevalent in less affluent areas. (See Kaufman, *When Crime Pays: Business Landlord's Duty to Protect Customers from Criminal Acts Committed on the Premises* (1990) 31 S.Tex. L.Rev. 89, 107–108, and authorities cited.) In such areas, the cost to businesses of elaborate security measures is likely to be prohibitive. In the absence of a prior similar incident, requiring business owners to anticipate and prevent a wide array of violent criminal conduct, including vicious group assaults like the one that occurred here, is likely to produce two unfortunate consequences in these economically depressed areas. Some businesses may take the elaborate precautions that the majority's holding requires, and will pass on the added costs to their customers in the form of higher prices (this has been referred to as a "crime tax"), thereby increasing the costs of goods and services for the people least able to afford the higher prices. (*Id.* at p. 108; Cabrera, *Negligence Liability of Landowners and Occupiers for the Criminal Conduct of Another: On a Clear Day in California One Can Foresee Forever* (1987) 23 Cal. Western L.Rev. 165, 188.) Other businesses will simply close their doors, thereby depriving the local community of employment opportunities as well as goods and services. Either way, the effect will be to make life more difficult and costly for the innocent residents of crime-plagued neighborhoods.

The final policy consideration in determining the existence of a tort duty is the availability, cost, and prevalence of liability insurance. This consideration too weighs against recognizing a duty here. The broader the duty imposed on businesses to anticipate and guard against violent criminal assaults on their customers and others, the more expensive liability insurance is going to be, if it is available at all. Because the duty that the majority imposes requires business owners to anticipate all forms of violent criminal conduct, even when there has been no prior similar incident, insurance coverage for this expanded liability will become more expensive and harder to obtain.

Accordingly, the policy considerations that this court articulated in *Rowland v. Christian, supra,* 69 Cal.2d 108, support my conclusion that the business owner here should not be held liable for not anticipating the violent criminal gang assault on plaintiff.

For all of these reasons, I dissent. I would affirm the judgment of the Court of Appeal.

**BROWN, J., Dissenting.**—I generally agree with Justice Kennard's dissenting opinion. The attack on plaintiff Michael Wollery Delagado was not foreseeable. Therefore, defendant Trax Bar & Grill had no duty to protect against third party criminal conduct. (Dis. opn. of Kennard, J., *ante*, at p. 253.).) However, unlike Justice Kennard, for the reasons set forth in my concurring opinion in *Morris v. De La Torre* (2005) 36 Cal.4th 260–279, 280 [30 Ca.Rptr.3d 173, 113 P.3d 1182] (conc. opn. of Brown, J.)), I do not believe our decision in *Kentucky Fried Chicken of Cal., Inc. v. Superior Court* (1997) 14 Cal.4th 814 [59 Cal.Rptr.2d 756, 927 P.2d 1260] imposed a duty on business owners based on ongoing criminal conduct.