Filed 4/2/13  Mendoza v. Baca CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PETRA MENDOZA et al., | B237292 |
| Plaintiffs and Appellants, | |
| | (Los Angeles County Super. Ct. No. KC056160) |
| v. | |
| | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |
| CONSUELO BACA, | |
| Defendant and Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on March 6, 2013, be modified as follows:

1.  On page 9, the first full paragraph, beginning "The statement of decision makes clear" is modified to reads as follows:

> The statement of decision makes clear that the trial court did not apply an elevated threshold of foreseeability but rather properly determined whether Duenas's violent criminal act was "reasonably" foreseeable under the circumstances.  Plaintiffs' conclusion that Baca could have prevented Duenas from shooting is speculative, at best.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

*BOREN, P.J., ASHMANN-GERST, J., CHAVEZ, J.

Filed 3/6/13  Mendoza v. Baca CA2/2 (unmodified version)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| PETRA MENDOZA et al., | B237292 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. KC056160) |
| v. | |
| CONSUELO BACA, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County.  Peter J. Meeka.  Affirmed.

The Homampour Law Firm, Arash Homampour and Wendi O. Wagner; The Law Offices of Thomas C. Zaret and Thomas C. Zaret for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, William John Rea, Jr. and Roy G. Weatherup for Defendant and Respondent.

Plaintiffs and appellants Petra Mendoza, Christopher Mendoza, and Steven Mendoza (collectively, plaintiffs) appeal from the summary judgment entered in favor of defendant and respondent Consuelo Baca (Baca) in this wrongful death action based on negligence and premises liability. We affirm the judgment.

## BACKGROUND

### The parties

Plaintiffs are the wife and children of decedent Bernardo Mendoza (Mendoza), who was shot and killed at a neighborhood bar and restaurant called "My Place." Baca was the owner of My Place at the time Mendoza was killed.

### Factual background

Mendoza and Baca were present at My Place on November 3, 2007, as were other patrons of the bar. Julio Duenas (Duenas) arrived at My Place at approximately 7:00 p.m. that night.

At some point during the evening, Duenas and other customers began arguing about who was responsible for paying musicians who had performed on the premises. As the men argued, Baca saw Duenas strike another customer. Baca told Duenas to stop or she would call the police. Duenas then struck Baca, and a customer named Alejandro Garcia (Garcia) intervened to defend Baca.

Duenas and Garcia left the premises to take their dispute outside. Baca telephoned the police, but was unable to speak to a dispatcher until after Duenas had left the premises. Baca told the dispatcher that the altercation had ended and that Duenas had left.

Shortly after Duenas left My Place, he returned. When Baca learned that Duenas had returned, she locked both the front and back doors to My Place to prevent him from entering. Minutes later, Duenas broke through the front door, shooting a gun. A bullet

3

struck Baca in the back. Another bullet struck Mendoza, killing him. Baca telephoned the police as she lay bleeding behind the bar. Police subsequently arrested Duenas, who was convicted of murdering Mendoza.

**Procedural background**

Plaintiffs filed this wrongful death action against Baca, asserting causes of action for negligence and premises liability. Baca moved for summary judgment on the grounds that she owed no legal duty to Mendoza to prevent his death because his murder was unforeseeable, and because her actions and/or omissions were not the legal cause of Mendoza's death. In support of her motion, Baca submitted her own declaration in which she averred that during the 17 years she owned My Place, there had never been a shooting on the premises. Baca further stated in her declaration that she had never seen Duenas before the incident and knew nothing about his background, Duenas did not tell her that he intended to return to My Place or to exact retribution, and she had no reason to believe that Duenas would return to shoot her and her customers.

Plaintiffs opposed the summary judgment motion, arguing that Baca failed to meet her burden of establishing no duty or lack of causation and that triable issues of material fact existed regarding the issues of duty, breach of duty, and causation. Plaintiffs disputed the fact that Baca did not know Duenas intended to return to exact retribution. They offered in opposition the declaration of a customer named Jesus Mendoza, who stated that Karina Lopez, a waitress working at My Place on the night of the incident, blurted out a few days after the incident that she had heard Duenas vow to return to My Place to shoot. Plaintiffs also disputed the fact that Baca knew nothing about Duenas's background. They offered in opposition the deposition testimony of responding Los Angeles County Sheriff's Deputy Phillip Martinez, who testified that he interviewed the owner of the SUV Baca had observed outside My Place shortly before the incident. The owner of the vehicle told Deputy Martinez that Duenas was a member of the 38th Street gang and that Duenas had the number 38 tattooed on his inner forearm.

4

Plaintiffs disputed that the doors to My Place remained locked after Duenas left the premises initially.  They offered evidence that the front entrance to My Place was secured by two doors -- an outer iron gate and an inner wood door -- and that although Baca locked both the gate and the wood door after Duenas initially left the premises, she subsequently unlocked both the gate and the door in order to let a musician out.  When Baca did so, she saw an SUV and wrote down its license plate number.  She then locked the wood door only, and Duenas later pushed his way through that door to enter the premises.

Plaintiffs offered evidence to establish that Baca was afraid when a group of men, including Duenas, first entered the bar both because of the size of the group and because she knew that one of the men owned a ranch at which guns had been fired.  Plaintiffs also offered evidence that Baca had no security to frisk these men and did not know if they had guns or access to guns, and that Baca had no training in self-defense or in security measures for a bar, and never had anyone to advise her on security measures.  Finally, plaintiffs offered evidence that Baca was the owner of the El Castillo Night Club from 1995 to 2005, and on one occasion in 1999, a shooting occurred there.

Both parties filed objections to each other's evidence.  The trial court overruled all the evidentiary objections.  The court granted plaintiffs' request for judicial notice of the preliminary hearing transcript in *People v. Duenas*, the criminal case in which Duenas was convicted for Mendoza's murder; and a copy of the respondent's brief, the transcript of Baca's deposition, and the published appellate court decision in *Lopez v. Baca* (2002) 98 Cal.App.4th 1008 (*Lopez*), a civil action against Baca by the victim of the 1999 shooting at the El Castillo Night Club.  In doing so, the trial court took judicial notice of the existence of the preliminary hearing transcript in *People v. Duenas* and the existence of Baca's deposition transcript in *Lopez*, but not the contents of those documents.  With respect to the appellate opinion in *Lopez*, the trial court took judicial notice of the existence of the opinion and the result reached, but did not take judicial notice of the statement of facts for the truth of those matters.

5

In ruling on the motion for summary judgment, the trial court concluded that Baca had met her burden of proving that plaintiffs could not establish the element of duty because it was not reasonably foreseeable that Duenas would return to My Place to shoot its patrons. The trial court further concluded that plaintiffs failed to establish any triable issue of material fact as to the foreseeability of Duenas's actions and whether Baca owned a duty to protect Mendoza from those actions. Summary judgment was entered in Baca's favor, and this appeal followed.

## DISCUSSION

### I. Standard of review

Summary judgment is granted when a moving party establishes the right to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears the initial burden of proving that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037.) Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) If the plaintiff does not make such a showing, summary judgment in favor of the defendant is appropriate. In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . . [T]he defendant need not himself conclusively negate any such element . . . ." (*Id.* at p. 853.)

We review the trial court's grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348; Code Civ. Proc., § 437c, subd. (c).) We review the trial court's evidentiary rulings in connection with a summary judgment motion under the abuse of discretion standard. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

### II. Duty and foreseeability

6

The elements of plaintiffs' causes of action for negligence are duty, breach of duty, causation, and damages.  (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 529.)  The same foundational elements must be established for a cause of action for premises liability based on negligence.  (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205.)

The key element in this case is duty, the existence of which is a question of law. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 (*Ann M.*) disapproved on other grounds in *Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 527, fn. 5.) "Duty 'may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship.'  [Citation.]"  (*Melton v. Boustred, supra*, 183 Cal.App.4th at pp. 529-530.)

"[A]s a general matter, there is no duty to act to protect others from the conduct of third parties.  [Citations.]"  (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235 (*Delgado*).)  However, "[a] defendant may owe an affirmative duty to protect another from the conduct of third parties if he or she has a 'special relationship' with the other person," such as the relationship between a bar owner and its patrons or invitees.  (*Ibid.*) In such a case, the general duty of maintenance "include[s] the duty to take reasonable steps to secure common areas against *foreseeable* criminal acts of third parties that are likely to occur in the absence of such precautionary measures.  [Citations.]"  (*Ann M., supra*, 6 Cal.4th at p. 674, italics added.)

Foreseeability is a crucial factor in determining the existence of such a duty.  (*Ann M., supra*, 6 Cal.4th at p. 676.)  "[A] duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated.  [Citations.]"  (*Ibid.*)  Foreseeability is determined in light of the totality of the circumstances.  (*Sakiyama v. AMF Bowling Centers, Inc.* (2003) 110 Cal.App.4th 398, 406 (*Sakiyama*).)

With the benefit of hindsight, almost any result is foreseeable.  For this reason, foreseeability alone is not sufficient to create an independent duty of care.  (*Sakiyama, supra*, 110 Cal.App.4th at p. 407.)  The existence of a duty therefore depends not only on

7

the foreseeability of the risk but also a weighing of policy considerations for and against the imposition of liability.  (*Ibid.*)  "'Because the consequences of a negligent act must be limited to avoid an intolerable burden on society [citation], the determination of duty "recognizes that policy considerations may dictate a cause of action should not be sanctioned no matter how foreseeable the risk." [Citation.]  "[T]here are clear judicial days on which a court can foresee forever and thus determine liability but none on which the foresight alone provides a socially and judicially acceptable limit on recovery of damages for [an] injury." [Citation]  In short, foreseeability is not synonymous with duty, nor is it a substitute.' [Citation.]" (*Ibid.*)

## III.  Baca met her initial burden of establishing no duty to prevent the criminal act

Baca met her initial burden of establishing that she owed no duty to prevent Mendoza's death in this case because it was not reasonably foreseeable that Duenas would return to My Place to shoot its patrons.  Baca presented evidence that there had never been a shooting at My Place during her 17 years of ownership.  She had never seen Duenas before the night of the shooting and knew nothing about his background.  Duenas did not tell Baca that he intended to return or to exact retribution after he left the premises initially.

## IV.  No triable issue as to duty

Plaintiffs failed to raise any triable issue as to foreseeability.  In an effort to establish foreseeability, plaintiffs presented evidence that a waitress working at My Place on the night of the incident told a customer several days after the incident that she had heard Duenas say he was returning to the bar to shoot.[1]  There is no evidence, however that Baca heard Duenas make such a statement.  Plaintiffs also presented evidence that Duenas had the number 38 tattooed on his inner forearm, allegedly designating him as a member of the 38th Street gang but offered no evidence that Baca saw the tattoo or

---

[1]    The trial court overruled Baca's hearsay objection to this evidence as well as other evidentiary objections raised by Baca because she failed to quote the evidence objected to, in violation of California Rules of Court, rule 3.1354.  Baca did not appeal the trial court's evidentiary rulings.

recognized its significance. Plaintiffs' evidence that Baca became nervous when a group of men, including Duenas, entered the bar, because of the size of the group and because one of the men owned a ranch at which people allegedly shot guns, and that Baca knew that customers who consumed alcohol might act unreasonably or become violent, does not support the conclusion that Baca knew or should have known Duenas would return to My Place to shoot its patrons. That Baca was a defendant in *Lopez*, a prior civil action by a nightclub patron who was shot at a different business establishment owned by Baca more than seven years before the incident at issue here does not establish the foreseeability of Duenas's actions in this case. Moreover, in that prior action, summary judgment was affirmed in Baca's favor because the court found that Baca owed no duty to the victim because the shooting was unforeseeable as a matter of law. (*Lopez, supra*, 98 Cal.App.4th at p. 1015.)

Plaintiffs cite *Delgado* as support for their claim that Baca's "special relationship" with Mendoza as the owner of a bar patronized by him created a duty to protect Mendoza from Duenas's criminal conduct. In *Delgado*, our Supreme Court reaffirmed the "well established" principle that commercial proprietors have a duty to take "'reasonable steps to secure common areas against *foreseeable* criminal acts of third parties that are likely to occur in the absence of such precautionary measures.' [Citations.]" (*Delgado, supra*, 36 Cal.4th at p. 237, italics added.) The court in *Delgado* did not abrogate foreseeability as a crucial factor in determining the existence and scope of the duty owed by a commercial proprietor to its patrons but set forth a "sliding-scale balancing formulation" for determining the scope of that duty:

> "In circumstances in which the burden of preventing future harm caused by third party criminal conduct is great or onerous (as when a plaintiff . . . asserts the defendant had a legal duty to provide guards or undertake equally onerous measures, or as when a plaintiff . . . asserts the defendant has a legal duty to provide bright lighting, activate and monitor security cameras, provide periodic 'walk-throughs' by existing personnel,

9

or provide stronger fencing), heightened foreseeability -- shown by prior similar criminal incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location -- will be required. By contrast, in cases in which harm can be prevented by simple means or by imposing merely minimal burdens, only 'regular' reasonable foreseeability as opposed to heightened foreseeability is required."

(*Delgado, supra*, 36 Cal.4th at pp. 243-244, fn. 24.)

Plaintiffs claim the trial court's analysis in this case was faulty because it was premised solely on Baca's alleged failure to hire security guards and the "high degree of foreseeability" required to impose such a duty, and that the trial court ignored the "sliding-scale balancing formulation" set forth in *Delgado*. They claim a substantially lower threshold for determining foreseeability should have been applied because they alleged that Baca could have taken other reasonable, relatively simple, and minimally burdensome measures to prevent Mendoza's death, such as "inform[ing] police of the threat, warn[ing] the patrons of MY PLACE of the threat" or "clos[ing] MY PLACE as a result of the threat."

The statement of decision makes clear that the trial court did not apply an elevated threshold of foreseeability but rather properly determined whether Duenas's violent criminal act was "reasonably" foreseeable under the circumstances. The trial court also addressed plaintiffs' allegations regarding additional measures Baca could have taken, noting that the same result could have occurred even if Baca had taken such measures. The court observed that plaintiffs' own evidence showed the existence of a window at the front of the bar through which Duenas could have fired his gun. Plaintiffs' conclusion that Baca could have prevented Duenas from shooting is speculative, at best.

The same reasoning applies to plaintiffs' argument that Baca may be held liable for negligently undertaking to protect Mendoza and the other patrons by calling 911 in response to Duenas's physical altercation with Garcia but then telling the dispatcher that

10

no police response was necessary because Duenas had already left the premises and by initially locking the doors to the premises after Duenas's departure but subsequently unlocking the front door through which Duenas forced his way back in. As the trial court noted, there is no evidence to suggest that Baca's actions or omissions encouraged the shooting. Rather, the evidence showed that Baca attempted to prevent further violence in her bar by calling the police when the physical altercation between Duenas and Garcia first started, locking the doors when she learned that Duenas had returned, and writing down the license plate number of the vehicle Baca observed parked near her bar.

There is no evidence to support plaintiffs' assertion that Baca's actions created a dangerous condition at the premises. Providing musical entertainment, albeit not allowed under the terms of Baca's business license, and requiring customers to pay for requested songs did not, as plaintiffs suggest, create a dangerous condition that caused the shooting. Mendoza's injuries were not closely connected to Baca's actions but instead were caused by Duenas's act of firing multiple rounds from his gun into the bar.

## V. Alleged evidentiary errors

Plaintiffs challenge the trial court's evidentiary rulings limiting judicial notice of the preliminary hearing transcript in *People v. Duenas* and the transcript of Baca's deposition in *Lopez* to the existence of those documents and excluding their contents. They claim Baca's testimony at the preliminary hearing came within the state of mind of an exception to the hearsay rule because her statement that she did not want the police to respond to My Place during her initial 911 call was offered to show the effect of that statement on the police rather than to prove the truth of the statement itself. Plaintiffs further claim Baca's deposition testimony in *Lopez*, the prior civil action involving the 1999 shooting at the El Castillo Night Club, was offered to show Baca's motivation to make money from customers by "scamming" them without their knowledge. Plaintiffs fail to establish how the effect of Baca's statements on the 911 dispatcher or the motivation underlying Baca's business practices at the El Castillo Night Club seven years

11

ago are relevant to the foreseeability of Duenas's actions in this case. The trial court did not abuse its discretion by limiting judicial notice of those documents.

Summary judgment was properly granted in this case.

**DISPOSITION**

The judgment is affirmed. Baca is awarded her costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

CHAVEZ

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST